**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **SOURAYA FAAS,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:16−cv−01299** |
| | § | |
| **CARLOS CASCOS, in his** | § | |
| **Official capacity as the** | § | |
| **Secretary of the State of Texas** | § | |
| **and the STATE OF TEXAS,** | § | |
| *Defendants.* | § | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT
AND APPLICATION FOR DECLARATORY AND INJUNCTIVE RELIEF**

# <u>TABLE OF CONTENTS</u>

**SUMMARY OF ARGUMENT** ........................................................................... 1

**SUMMARY OF RELEVANT FACTS** ........................................................... 1

**PROCEDURAL HISTORY** ........................................................................... 3

**STATEMENT OF THE ISSUES** .................................................................... 4

**STANDARD OF REVIEW** ............................................................................ 4

**ARGUMENT** ..................................................................................................... 5

    **I.**   S<small>ECTION</small> 192.032 <small>IS</small> C<small>ONSTITUTIONAL UNDER THE</small> *A<small>NDERSON</small>/B<small>URDICK</small>* T<small>EST</small> .............. 6

        **A. Texas's Signature Requirement and Statutory Deadline Are Constitutional** ....... 7

        **B. The Requirement to Submit a Written Statement from the Vice-Presidential Candidate is Constitutional** ............................................... 9

    **II.**   M<small>S</small>. F<small>AAS</small> H<small>AS</small> F<small>AILED TO</small> A<small>LLEGE</small> S<small>UFFICIENT</small> F<small>ACTS TO</small> S<small>UPPORT</small> H<small>ER</small> C<small>LAIMS</small>. .... 11

**PRAYER FOR RELIEF** ................................................................................. 12

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Am. Party of Texas v. White¸*
    415 U.S. 767 (1974) ........................................................................................... 7, 10

*Anderson v. Celebrezze*,
    460 U.S. 780 (1983) ............................................................................................. 5, 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................. 4

*Burdick v. Takushi*,
    504 U.S. 428 (1992) ............................................................................................. 5, 6

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) .................................................................................. 4

*Jenness v. Fortson*,
    403 U.S. 431 (1970) .............................................................................................. 10

*Martin K. Eby Constr. Co., Inc. v. Dallas Area Rapid Transit*,
    369 F.3d 464 (5th Cir. 2004) .................................................................................. 4

*Meyer v. Texas*,
    Civil Action No. H-10-3860, 2011 WL 1806524 (S. D. Texas May 11, 2011) ........ 6, 7, 10, 11

*Munro v. Socialist Workers Party*,
    479 U.S. 189 (1986) ................................................................................................. 7

*Nader v. Connor*,
    332 F. Supp. 2d 982 (W.D. Tex. 2004) .......................................................... 7, 8, 9

*Nader v. Connor*,
    388 F.3d 137 (5th Cir. 2004) ............................................................................. 6, 7

*Neitzke v. Williams*,
    490 U.S. 319 (1989) ................................................................................................. 4

*Pennzenergy Co. v. Wells*,
    31 Fed. Appx. 158 (5th Cir. Dec. 17, 2001) .......................................................... 4

*Plotkin v. IP Axess Inc.*,
    407 F.3d 690 (5th Cir. 2005) ............................................................................. 4, 5

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004) .................................................................................. 5

*Storer v. Brown*,
    415 U.S. 726 (1974) ................................................................................................. 8

*Texas Indep. Party v. Kirk*,
  84 F.3d 178 (5th Cir. 1996) ........................................................................ 5, 6, 7, 10

## **<u>Statutes</u>**

Tex. Elec. Code § 192.032 ............................................................................. passim

Defendants, Carlos Cascos, in his official capacity as the Secretary of the State of Texas, and the State of Texas (collectively, "Defendants"), file this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Complaint and Application for Declaratory and Injunctive Relief pursuant to Federal Rule of Civil Procedure 12(b)(6). In support thereof, Defendants would show the Court as follows:

## SUMMARY OF ARGUMENT

This case involves a constitutional challenge to the Texas Election Code and the ballot-access requirements for independent presidential candidates found in Section 192.032. Plaintiff, Souraya Faas, is an independent presidential candidate, who seeks to have her name placed on the 2016 general ballot without complying with any of the state law requirements designed to guarantee orderly and fair elections. Specifically, Ms. Faas challenges the state's requirements that independent candidates establish a modicum of support from the electorate by filing a petition with a certain number of valid voter signatures and submit that petition by a particular date to the Secretary of State. She also contends that the statutory requirement that an independent candidate submit a written statement from a potential running mate consenting to serve as the vice-presidential candidate violates the First and Fourteenth Amendments. Because most of the arguments advanced by Ms. Faas have already been considered and rejected by the courts of this circuit, this Court should grant Defendants' motion to dismiss and affirm (once again) the constitutionality of Texas's ballot-access provisions.

## SUMMARY OF RELEVANT FACTS

Souraya Faas, a resident of Florida, is a declared independent candidate for the office of President of the United States. Compl., ¶ 1. Ms. Faas registered with the Federal Election Commission ("FCC") in 2015 as a presidential candidate. *Id.*, ¶ 8. She alleges that she meets all

the requirements to be President and "has campaigned in several states, promoted her candidacy

on Facebook, You Tube and other digital mediums . . . ." *Id.*, ¶¶ 8, 10.

      Texas law imposes specific requirements on independent presidential candidates who, like

Ms. Faas, seek to be placed on the general election ballot.  Section 192.032 of the Texas Election

Code requires that:

> (a) To be entitled to a place on the general election ballot, an independent
> candidate for president of the United States must make an application for a place
> on the ballot.

> (b) An application must: …(3) be accompanied by: (A) a petition that satisfies
> the requirements prescribed by Section 141.062; and (B) written statements signed
> by the vice-presidential candidate and each of the presidential elector candidates
> indicating that each of them consents to be a candidate.

> (c) The application must be filed with the secretary of state no later than the second
> Monday in May of the presidential election year.

> (d) The minimum number of signatures that must appear on the petition is one
> percent of the total vote received in the state by all candidates for president in
> the most recent presidential general election.

> (f) The following statement must appear at the top of each page of the petition:
> "I did not vote this year in a presidential primary election."

> (g) A signature on the petition is invalid if the signer: (1) signs the petition on or
> before the date of the presidential primary election in the presidential election year;
> or (2) voted in a presidential primary election during the presidential election year.

TEX. ELEC. CODE, § 192.032 (West 2015).

      To comply with these requirements, an independent presidential candidate seeking to have

her name included on the general ballot must obtain and submit a compliant application to the

Secretary of State no later than May 9, 2016.  *See id.*; Compl., ¶¶ 20-22.  The application must

be accompanied by a petition showing "79,939 signatures of registered voters who did not vote

in the March 1, 2016 presidential primary" and who state their support for the independent

candidate.  Compl., ¶ 20.  The application must also include written statements from the vice-

presidential candidate and each of the presidential elector candidates.  TEX. ELEC. CODE, §

192.032; *see also* Compl., ¶ 22.

Ms. Faas does not allege that she has met—or even attempted to meet—any of these

requirements.  *See* Compl., ¶¶ 1 -27.  There is no allegation in the complaint that Ms. Faas

collected or attempted to collect the requisite number of voter signatures.  *See id.*  Nor has she

alleged that she filed an application with the Secretary of State by the statutorily-mandated May

9, 2016 deadline.  *See id.*  Rather, Ms. Faas complains that the "resources required to obtain the

number of qualified signatures . . . in the time required are prohibitive for [her] and other

independent presidential candidates," *id.*, ¶ 25, and that she should not be obligated to select her

running mate "before the collection of voter feedback in the form of signatures, " *id.*, ¶ 29.  She

asks that the Court remove these statutory obstacles and allow her name to be placed on the

general ballot in time for the November 2016 presidential election.  *See id.*, ¶ 42.

## PROCEDURAL HISTORY

Plaintiff initiated this action on May 5, 2016.  Compl. (ECF No. 1).  Plaintiff asserts two

causes of action: (i) "Discrimination Against Independent Presidential Candidates In Violation of

the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution," and

(ii) "Signature Requirement-Violation of the First and Fourteenth Amendments."  *Id.*  Pursuant to

the Court's Order granting Defendants' Unopposed Motion for Extension of Time to Answer

Plaintiff's Complaint, dated June 6, 2016 (ECF No. 4), Defendants file this timely motion to

dismiss and supporting memorandum of law.

## STATEMENT OF THE ISSUES

1.  Whether Section 192.032 of the Texas Election Code, which imposes several ballot-access requirements on independent presidential candidates, survives constitutional scrutiny under the First and Fourteenth Amendments.

2.  Whether Plaintiff has alleged sufficient facts to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) (citations omitted); *accord Pennzenergy Co. v. Wells*, 31 Fed. Appx. 158, at *9 (5th Cir. Dec. 17, 2001) (per curiam) (quoting *Neitzke*, 490 U.S. at 326-27). "This procedure, operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and factfinding." *Neitzke,* 490 U.S. at 326-27.

Rule 12(b)(6) also allows a court to dismiss all or part of a complaint "for failure to state a claim upon which relief can be granted." To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff,'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co., Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)), a plaintiff must plead specific facts and cannot rely merely on "labels and conclusions" and a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. In a case such as this one, where the Plaintiff has done little more than offer "conclusory allegations, unwarranted factual inferences, [and] legal conclusions," the Court should grant the motion and dismiss the lawsuit with prejudice. *See Plotkin v. IP Axess Inc*., 407 F.3d

4

690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361

(5th Cir. 2004)).

## ARGUMENT

"Voting is of the most fundamental significance in our constitutional system." *Texas*

*Indep. Party v. Kirk*, 84 F.3d 178, 182 (5th Cir. 1996) (citing *Burdick v. Takushi*, 504 U.S. 428,

433 (1992)). The right to "vote in any manner and the right to associate for political purposes

through the ballot," however, are "not absolute." *Texas Indep. Party*, 84 F.3d at 182. As a practical

matter, states enjoy substantial authority to regulate elections in order "to ensure fairness, honesty,

and order." *Id.* (citing *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)).

Texas has exercised that authority by enacting a series of requirements to ensure that

independent candidates seeking to be placed on the general election ballot have sufficient support

among the electorate. An independent presidential candidate in Texas "qualifies for placement on

the ballot . . . by filing with the Secretary of State an application and petition containing signatures

equal in number to at least one percent of the total votes received in Texas by all candidates for

president in the most recent presidential general election." TEX. ELEC. CODE § 192.032(d). To

meet this requirement in the current election cycle, independent candidates must collect 79,939

valid signatures starting March 1, 2016. Compl., ¶ 20. Additionally, the application, which is a

separate document, must include information about and a consent statement from the candidate's

vice-presidential running mate and 38 presidential elector candidates. TEX. ELEC. CODE §

192.032(b). The application materials, along with the petitions, must be filed with the Secretary

of State not later than the second Monday in May of the presidential election year. *Id.* § 192.032(c).

The deadline for submission this election cycle was May 9, 2016. *See* Compl., ¶¶ 22, 29. Here,

Ms. Faas challenges the constitutionality of these requirements under the First and Fourteenth

5

Amendments and appears to asks that this Court to invalidate: (i) the voter signature requirement, (ii) the obligation that she submit a written statement of consent from her vice-presidential candidate, and (iii) the deadline for submission of these materials to the Secretary of State. *See id.*, ¶¶ 29, 42.

## I.    SECTION 192.032 IS CONSTITUTIONAL UNDER THE *ANDERSON/BURDICK* TEST

The framework for examining these ballot-access laws is well-settled. "In the Fifth Circuit, the proper test for [evaluating] the constitutionality of the contested regulations is the *Anderson/Burdick* test." *Meyer v. Texas,* Civil Action No. H-10-3860, 2011 WL 1806524 at * 3 (S. D. Texas May 11, 2011) (attached hereto as Exhibit A). "A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments against the precise interests put forward by the State as justifications for the burden imposed by its rule." *Texas Indep. Party*, 84 F.3d at 182 (citing *Anderson*, 460 U.S. at 789). "The rigorousness of the inquiry into the propriety of the state election law depends upon the extent to which the challenged regulation burdens First and Fourteenth Amendment rights." *Texas Indep. Party*, 84 F.3d at 182 (*citing Burdick*, 504 U.S. at 434). "If the contested regulations impose 'severe restrictions,' 'those regulations must be 'narrowly drawn' and support 'compelling' state interests . . . ." *Meyer*, 2011 WL 1806524 at * 3 (citing *Burdick,* 504 U.S. 434). If the ballot-access provisions, however, only impose "reasonable, nondiscriminatory restrictions," the state must only articulate "important regulatory interests" for the law to pass constitutional muster. *Id.*

Every court within the Fifth Circuit to apply the *Anderson/Burdick* framework to Texas's ballot-access provisions has determined the Election Code is reasonable and non-discriminatory and advances important regulatory interests. *See, e.g., Nader v. Connor*, 388 F.3d 137 (5th Cir.

2004) (affirming the constitutionality of Texas's voter signature requirement and the statutory deadline for independent presidential candidates); *Texas Indep Party,* 84 F.3d at 184-85 (upholding the signature requirement for independent candidates and finding that forcing independent candidates to meet petitions requirements did not impose a severe burden); *Meyer*, 2011 WL 1806524 at * 3 (S. D. Texas May 11, 2011) (upholding the constitutionality of the statutory requirements for independent candidates for the House of Representatives).  This Court should follow suit and uphold the constitutionality of the challenged ballot-access requirements.

**A.  Texas's Signature Requirement and Statutory Deadline Are Constitutional**

The requirement that an independent candidate demonstrate sufficient public support by securing signatures from at last one percent of voters in the last presidential election by a statutory-specified date is not unduly burdensome.  *See, e.g., Munro v. Socialist Workers Party*, 479 U.S. 189, 194 (1986) ("States have an undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot."); *Am. Party of Texas v. White*¸ 415 U.S. 767 (1974) ("Demanding signatures equal in number to 3% to 5 % of the vote in the last election  (for governor and State House of Representatives) is not invalid on its face . . . " or unduly burdensome.").  Indeed, in *Nader v. Connor*, 388 F.3d 137 (5th Cir. 2004), the Fifth Circuit unanimously held so when it affirmed the district court's decision finding Texas's signature and deadline requirements for independent presidential candidates "legal and constitutional."  *Id.* ("Essentially for the reasons as well stated in the district court's memorandum opinion, *Nader v. Connor,* 332 F. Supp. 2d 982 (W.D. Tex. 2004), we affirm that court's final judgment declaring the challenged Texas Election Code provisions legal and constitutional."); *see also Nader v. Connor,* 332 F. Supp. 2d 982, 986 (W.D. Tex. 2004), *aff'd* 388 F.3d 137 (5th Cir. 2004).

There, the district court considered Ralph Nader's challenge to the same ballot-access requirements at issue in this case.[1]  *See Nader,* 332 F.Supp.2d at 986.  In declining to apply strict scrutiny, the district court found that the statutory one-percent signature requirement was not "unduly restrictive or unreasonable" since the "presidency is the only office being sought by that candidate", *id.* at 987, and the state has a legitimate interest in "assur[ing] itself that the candidate is a serious contender truly independent, and with a satisfactory level of community support."  *Id.* (citing *Storer v. Brown,* 415 U.S. 726, 746 (1974) (footnote omitted)).

The district court additionally held that "more restrictive signature and deadline requirements for an independent candidate [could] be justified if the ballot-access requirements, as a whole, are reasonable and similar in degree to those for a [] political-party candidate." *Id.* at 988 (citing *Storer,* 415 U.S. at 745).  In Texas, political parties "whether they be major, medium or minor, are subject" to an elaborate convention process "not imposed upon independent candidates seeking ballot access in Texas." *Nader*, 332 F.Supp.2d at 990.  That "winnowing process" helps to "eliminate frivolous candidates and field only serious candidates." *Id.*  By contrast an independent candidate need not reveal her candidacy until after the March presidential primaries (when she may start collecting signatures) and is not subject to any of the convention strictures.  Thus, an independent candidate "enjoys more flexibility in determining whether to run" and when to run "than does the candidate of a [] political party." *Id.* at 889.  This flexibility, the district court found—and the Fifth Circuit affirmed—suggests "the variance between the ballot-access requirements for independent candidates and [] political-party candidates is not sufficiently severe to warrant strict scrutiny." *Id.* at 889.

---

[1] Mr. Nader brought an as applied challenge to Sections 192.032(a), 192.032(b)(3)(A), 192.032(c), and 192.032(d) of the Texas Election Code.

Having determined that the signature requirement and statutory deadline did not impose a severe burden, the court considered whether Section 192.032 served "important state interests" and found that it did. *Nader,* 332 F. Supp. 2d at 992. The court held that Texas has "several legitimate interests to support" its ballot-access restrictions, including preserving "the integrity of the electoral process" and regulating "the number of independent candidates on the ballot by ensuring that (1) the electorate is enough aware of the candidate either to know his views or to learn and approve of them in a short period, and (2) that at least a minimum of registered voters are willing to take him and his views seriously." *Id.* Those same interests apply here.

Plaintiff has not alleged any facts tending to show Texans are aware of her candidacy— much less that she enjoys public support in the state. *See* Compl., ¶¶ 1-27. Indeed, her complaint reveals that she has done little more than indicate her desire to be President of the United States by filing an application with the FCC and campaigning online. *See id.* Allowing candidates like Ms. Faas to appear on the general ballot could certainly lead to a crowded ballot and voter confusion. Accordingly, the state continues to have a legitimate interest in restricting access to the general election ballot by requiring a showing of voter support.

Just as the Fifth Circuit adopted the lower court's analysis in *Nader*, this Court should follow that court's reasoning and uphold the constitutionality of the voter signature requirement and the statutory deadline under the *Anderson/Burdick* framework. The motion to dismiss should be granted as to these provisions. *See* TEX. ELEC. CODE § 192.032(a); 192.032(b)(3)(A); 192.032(c); 192.032(d).

### B. The Requirement to Submit a Written Statement from the Vice-Presidential Candidate is Constitutional

The motion should also be granted with respect to the requirement that independent presidential candidates file a written statement of consent from their vice-presidential candidates.

TEX. ELEC. CODE § 192.032(b)(3)(B). As with the other sub-parts of 192.032, this provision does not impose a severe burden on potential candidates. To the contrary, it is even less burdensome than other sections of the Code which have been held constitutional since it merely asks that the presidential candidate provide a written statement of consent from her proposed vice-presidential candidate by May 9, 2016.

Ms. Faas complains that this requirement is unconstitutional, presumably because the major party candidates need not disclose their running mates until later in the summer. Compl., ¶¶ 21, 29. This minor difference in timing is insufficient to trigger strict scrutiny because major party candidates and independent candidates are not similarly situated. *See Jenness v. Fortson*, 403 U.S. 431, 441-42 (1970). In fact, "there are obvious differences between the needs and potentials of a political party with historically established support, on the one hand, and a new or small political organization on the other." *Id.* States therefore are justified in imposing differing requirements on independent candidates without a track record and major political parties with complex primary and convention systems. *See, e.g., Am. Party of Texas,* 415 U.S. at 780-81 (holding Texas's statutory scheme for the nomination of candidates for the general election ballot constitutional); *Texas Indep. Party*, 84 F.3d at 180 (concluding that statutory scheme that treats major parties, minor parties and independent candidates differently is constitutional); *Meyer*, 2011 WL 1806524 at * 3 ("If a party candidate is to gain access to general election ballot, he must run the risk of a contested primary race, sometimes a run-off primary election, and thereby earn the support of voters to win a nomination. Independent candidates do not face these obstacles, because they are trying to gain access directly to the general election ballot.").

Moreover, the written statement of consent in this case ensures the legitimacy of an independent candidate's selection and avoids situations where an independent candidate proposes

10

a running-mate without that person's approval. Texas certainly has an interest in confirming that an independent candidate's proposed running mate has acquiesced to serve as the vice-president of the United States and to appear in a joint ticket. Accordingly, whatever slight burden Section 192.032(b)(3)(B) may impose on an independent candidate, it is easily outweighed by the State's legitimate interest in ensuring a fair and orderly election process. The court should grant the motion as to Section 192.032(b)(3)(B) and find the simple consent requirement constitutional.

## II.    MS. FAAS HAS FAILED TO ALLEGE SUFFICIENT FACTS TO SUPPORT HER CLAIMS

Alternatively, the Court should dismiss the lawsuit because Ms. Faas has not alleged sufficient facts to support a claim for which relief can be granted. In *Meyer v. Texas*, the plaintiff challenged the Secretary of State's decision to deny his petition "to be placed on the ballot as an independent candidate" for the House of Representatives because "his petition lacked the requisite number of permissible voters' signatures." 2011 WL 1806524 at *1. In granting Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the district court noted that "even assuming *arguendo* . . . that the plaintiff had suffered a constitutional burden" he had not shown that "burden to be severe" since—like Ms. Faas—he had failed to allege any facts "indicating . . . actual efforts to obtain voters' signatures" or tending to show that the challenged regulations "impeded his ballot access." *Id.* at *5.

The same is true here. Ms. Faas has not averred *any* facts showing that she filed an application with the Secretary of State, sought to obtain voter signatures or in any way attempted to meet the statutory requirements by May 9, 2016. Simply put, Ms. Faas has not alleged sufficient facts to support her claim that Section 192.032 is unduly burdensome or that she has been denied access to the general ballot. As such, her suit should be dismissed for failure to state a claim.

## PRAYER FOR RELIEF

For the foregoing reasons, Defendants respectfully ask the Court to grant their motion, dismiss Plaintiff's Complaint with prejudice, assess costs against Plaintiff, and award Defendants all other relief the Court deems appropriate

DATED:  June 30, 2016

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**BRANTLEY STARR**
Deputy First Assistant Attorney General

**JAMES E. DAVIS**
Deputy Attorney General for Civil Litigation

**ANGELA V. COLMENERO**
Chief, General Litigation Division

*/s/ María Amelia Calaf*
MARIA AMELIA CALAF
Assistant Attorney General
State Bar No. 24081915
Southern District No. 2487135
General Litigation Division
P.O. Box 12548
Austin, Texas 78711-2548
Telephone:  (512) 475-4063
Telecopier:  (512) 320-0667
maria.calaf@texasattorneygeneral.gov
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify a true and correct copy of the foregoing document was served via the court's electronic-service, on June 30, 2016, to:

Kenneth R. Barrett, Esq.
KRB Law
3740 Greenbriar #541873
Houston, Texas 77254
Phone: 281-433-0837
Fax: 346-980-4615
KennethRoyceBarrettLaw@yahoo.com

/s/ *María Amelia Calaf*
MARIA AMELIA CALAF