2011 WL 1806524
Only the Westlaw citation is currently available.
United States District Court,
S.D. Texas,
Houston Division.

Charles B. "Chuckm" MEYER, Plaintiff,
v.
State of TEXAS, et al, Defendants.

Civil Action No. H–10–3860.
|
May 11, 2011.

**Attorneys and Law Firms**

Charles B. "Chuckm" Meyer, Houston, TX, pro se.

Kathlyn Claire Wilson, Office of the Attorney General, Austin, TX, for Defendants.

*MEMORANDUM OPINION AND ORDER*

KENNETH M. HOYT, District Judge.

**I. Introduction**

*1 Pending before the Court is the defendants', Texas Secretary of State Hope Andrade and Texas Attorney General Greg Abbott, motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket Entry No. 11). The plaintiff, Charles B. Meyer, filed a response (Docket Entry No. 14), to which the defendants filed a reply (Docket Entry No. 15). After having carefully reviewed the motion, the responses and the applicable law, the Court grants the defendants' motion.[1]

**II. Factual Background**

This case concerns the *pro se* plaintiff's allegations that certain Texas Election Code provisions are unconstitutional. When the plaintiff filed suit on October 15, 2010, he was a certified write-in candidate for United States House of Representatives election on November 2, 2010.[2] The Secretary of State's office denied his petition to be placed on the ballot as an independent candidate because his petition lacked the requisite number of permissible voters' signatures. The Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331.

**III. Contentions of the Parties**

**A. The Defendants' Contentions**
The defendants contend that the plaintiff's complaint should be dismissed because he has not stated any constitutional violation concerning Texas' laws on: (1) preventing people who voted in a party primary from signing an independent candidate's petition for the general election ballot; (2) straight party voting; or (3) the order of candidates on the general election ballot. The defendants also aver that the contested Texas election regulations are permissible under the Constitution's relevant Qualifications Clause,[3] in that they do not establish additional *de facto* criteria for public office. The defendants maintain that, even if the plaintiff's allegations do state a constitutional burden, that burden is mild and is outweighed by the state's important interests in appropriately regulating elections.

**B. The Plaintiff's Contentions**
The plaintiff contends that Texas' process for electing U.S. Representatives is biased toward members of political parties, particularly the Republican and Democratic parties. He asserts that the process establishes extra, unconstitutional qualifications to serve as a U.S. Representative beyond those permitted under the relevant Qualifications Clause of the Constitution. Specifically, he maintains that Texas' statutory scheme governing ballot access for non-party candidates for federal offices violates: (1) his First Amendment right to freedom of association by giving preferential treatment to party-affiliated candidates;[4] (2) his Fourteenth Amendment rights to equal protection and due process by discriminating against non-party candidates via preferential ballot ordering and straight party voting; and (3) establishing unconstitutional requirements to run for office, including requiring certain petition signature requirements.

**IV. Standard of Review**
*2 A defendant may to move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). Under the requirements of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.,* 94

F.3d 189, 194 (5th Cir.1996) (citing *Mitchell v. McBryde,* 944 F.2d 229, 230 (5th Cir.1991)). Dismissal is appropriate only if, the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted). Moreover, in light of Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the [allegations] need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (*per curiam*) (quoting *Twombly,* 550 U.S. at 555). Even so, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly* at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

More recently, in *Ashcroft v. Iqbal,* the Supreme Court expounded upon the *Twombly* standard, reasoning that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly* at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 129 S.Ct. at 1949 (citing *Twombly* at 556). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Ashcroft* at 1950 (quoting FED. R. CIV. P. 8(a)(2)). Nevertheless, when considering a 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his claims, not whether the plaintiff will eventually prevail. *See Twombly* at 563 n. 8 (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (overruled on other grounds)); *see also, Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir.1999).

### V. Analysis and Discussion

The Court grants the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Texas Election Code does not prevent the plaintiff from being placed on the ballot, nor does it unconstitutionally burden him. The contested laws merely serve to: (1) cause the plaintiff's supporters to write his name on the ballot rather than to check a box beside his name; (2) prevent him from being the first candidate listed on the ballot; and (3) require that he obtain petition signatures from non-primary voters. None of these facts amount to constitutional violations. Furthermore, even if he had properly alleged any constitutional burden, that slight burden would be outweighed by the state's important interests in regulating elections.

**\*3** In the Fifth Circuit, the proper test for the constitutionality of the contested regulations is the *Anderson/Burdick* test. *See Texas Indep. Party v. Kirk,* 84 F.3d 178, 182 (5th Cir.1996) (applying *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1982); *Burdick v. Takushi,* 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992)). As the Fifth Circuit noted, "[v]oting is of the most fundamental significance in our constitutional system. However, the right to vote in any manner and the right to associate for political purposes through the ballot are not absolute. [Practically speaking], there must be substantial regulation of elections to ensure fairness, honesty, and order." *Texas Indep. Party,* 84 F.3d at 182.

Under *Anderson,* when analyzing ballot access, the Court "must first consider the character and magnitude of the asserted injury to the rights protected by First and Fourteenth Amendments." *Anderson,* 460 U.S. at 789. Next, the Court must consider the state's interests in maintaining the contested voting regulations and weigh those interests against the plaintiff's allegedly burdened constitutional rights. *Id.* (citing *Williams v. Rhodes,* 393 U.S. 23, 30–31, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968)).

Under *Burdick,* "the rigorousness of [a court's] inquiry ... depends upon the extent to which a challenged regulation burdens [a plaintiff's constitutional] rights." *Burdick,* 504 U.S. at 434. If the contested regulations impose "severe restrictions," those regulations must be "narrowly drawn" and support "compelling" state interests, whereas "reasonable, nondiscriminatory restrictions" require only "important regulatory interests" to pass constitutional muster. *Id.* (internal quotations omitted).[5] The Court determines both that the plaintiff has failed to allege any severe restriction and that the defendants have offered important regulatory interests to justify the contested voting regulations.

### A. Restricting Petition Signatories to Voters Who Have Not Voted in a Party Primary

The Court determines that the plaintiff has failed to state a claim regarding the constitutionality of restricting his petition signatories to voters who have not voted in a party primary because he is not similarly situated to party candidates. Party candidates must first pay filing fees or present petitions to gain access to the party primary ballot —not to the general election ballot. TEX. ELEC.CODE § 172.021(b). If a party candidate is to gain access to the general election ballot, he must run the risk of a contested primary race, sometimes a run-off primary election, and thereby earn the support of party voters to win a nomination.

Independent candidates do not face these obstacles, because they are attempting to gain access directly to the general election ballot. They often must file a petition containing the signatures of five hundred supporters. TEX. ELEC.CODE § 142.007(2)(A). [6] Each page of that petition must contain a statement that the signatory has not voted in any party primary for the same office during the same election cycle. TEX. ELEC.CODE § 142.008. Also, a voter may not sign the independent "petition of more than one candidate for the same office in the same election." TEX. ELEC.CODE § 141.066.

*4 Write-in candidates, facing even fewer obstacles, may pay a fee to have their names listed at the polling places, but their names do not appear on the general election ballot. [7] A write-in candidate, such as the plaintiff, can gain ballot access even without the signatures required of independent candidates. Because of lack of party affiliation, independent and write-in candidates are differently situated; hence treating them differently in reasonable and nondiscriminatory ways does not offend the plaintiff's constitutional protections. See *Jenness v. Fortson,* 403 U.S. 431, 441–42, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1970). "[T]here are obvious differences between the needs and potentials of a political party with historically established broad support, on the one hand, and a new or small political organization on the other." *Jenness,* 403 U.S. at 441–42. Accordingly, states are justified in supporting the "important state interest [of] requiring some significant modicum of support" for a candidate to appear on the ballot to avoid confusion or "even frustration of the democratic process." *Id.* at 442.

Despite having permissibly different registration rules for party and independent or write-in candidates, the contested regulations apply the same general principle to all voters: once the vote is cast, voters must abide by their choices in any given election. For each voting season, once a voter has voted in a party primary, that voter may not vote in the other party's run-off election. Likewise, once a voter has signed one independent candidate's petition, he may not sign another's petition. Similarly, once party voters have voted within their chosen party primary, they may not act as independent voters and sign independent candidates' petitions.

Under *Anderson,* the Court first examines the extent to which the challenged election statutes burden the plaintiff's constitutional rights. *Anderson,* 460 U.S. at 789. The plaintiff avers that prohibiting party primary voters from signing his petition as an independent candidate impedes his ability to gather supporters, thus contravening his right to freedom of association. However, if a voter truly wished to support the plaintiff, that voter merely needed to abstain from voting in a party primary or from signing another independent candidate's petition. Regardless, even though the plaintiff did not —for whatever reason—obtain five hundred acceptable signatures, he was still allowed to register as a write-in candidate.

Texas' interests in limiting an independent candidate's petition signatures to those who have not voted in a party primary are reasonable and non-discriminatory. *See Anderson,* 460 U.S. at 789. "States have an undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot." *Munro v. Socialist Workers Party,* 479 U.S. 189, 194, 107 S.Ct. 533, 93 L.Ed.2d 499 (1986) (internal quotation marks and citation omitted).

Texas also has an important interest in requiring party affiliation through an entire election cycle because such a requirement prevents both party and independent voters from influencing the nominees of opposing parties by voting in the opposing parties' run-off primary elections. The law preserves the "one person, one vote" principle by prohibiting those who have given their primary vote to a party candidate from voting that another independent candidate be placed on the ballot. *See Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 219, 107

S.Ct. 544, 93 L.Ed.2d 514 (1986) (a state can have "a legitimate interest in seeking to curtail 'raiding,' [whereby voters who are sympathetic with one party vote on another party's ballot to affect the results of that other party's primary,] since that practice may affect the integrity of the electoral process" (internal citations and other internal quotation omitted)).

**\*5** Under *Burdick,* even assuming *arguendo* that the plaintiff suffered a constitutional burden, he has not shown that burden to be severe. *Burdick,* 504 U.S. at 434. He has given no indication of his actual efforts to obtain voters' signatures, and he has made no showing that these regulations impeded his ballot access. Whereas the plaintiff has made an insufficient showing of any constitutional burden, the defendants have presented "reasonable, nondiscriminatory reasons" for imposing the petition signature requirement. *Id.* On balance, the Court finds that the state's important regulatory interests outweigh whatever slight burden there may be to the plaintiff's rights to freedom of association, equal protection or due process, and it finds no burden on the right to vote. Therefore, the Court grants the defendants' motion regarding this issue.

**B. Straight Party Voting**
The Court grants the defendants' motion regarding straight party voting because the plaintiff has shown no burden to his constitutional rights. Under *Anderson,* the plaintiff has failed to assert a significant constitutional injury. *See Anderson,* 460 U.S. at 789. As stated above in **Section V(A),** states may reasonably treat party, independent and write-in candidates differently because not all candidates are similarly situated. The plaintiff has offered no factual allegations to support his contention that straight party voting biases voters toward party-nominated candidates. Any voter who wished to vote for the plaintiff could have done so in the general election.

Texas, however, safeguards important interests by regulating elections via the option of straight party voting. "[P]arty levers simplify and speed up the election process, and therefore are justified under the states' discretionary powers." *Krasnoff v. Hardy,* 436 F.Supp. 304, 310 (E.D.La.1977) (citing *Voorhees v. Dempsey,* 231 F.Supp. 975, 977 (D.Conn.1964) (holding that the mandatory requirement of a party lever was not "fundamentally unfair or unreasonably discriminatory in contravention of the Fourteenth Amendment"). Weighing the factors involved in deciding whether straight party voting violated the plaintiff's constitutional rights, the Court finds no constitutional burden because he is not similarly situated to party candidates.

Under *Burdick,* even if the plaintiff's constitutional rights were burdened, that slight burden is "reasonable [and] nondiscriminatory" and furthers Texas' "important regulatory interests." *Burdick,* 504 U.S. at 434. As noted in *Krasnoff,* the state's interests in election speed and simplicity are important regulatory interests, and the plaintiff has not advanced a sufficient constitutional burden to outweigh those interests. *See Krasnoff,* 436 F.Supp. at 310. The Court finds no severe burden to the plaintiff's constitutional rights. But even if the plaintiff's constitutional rights were slightly burdened, the state's important regulatory interests would outweigh that slight burden. Accordingly, the Court grants the defendants' motion on this issue.

**C. Ballot Order**
**\*6** The Court also grants the defendants' motion regarding the plaintiff's ballot order allegation because the Court finds that he is not similarly situated to party candidates. Texas law arranges party candidates in descending order on the general election ballot, beginning with the party whose last gubernatorial candidate received the most votes. TEX. ELEC.CODE § 52.091(a)-(b). Parties without a candidate in the last gubernatorial election appear next, with their order determined by a drawing. *Id.* Independent candidates appear next, followed by write-in candidates. TEX. ELEC.CODE § 52.065(d)-(e).

Under *Anderson,* the "character and magnitude" of the plaintiff's asserted constitutional violation is slight. *Anderson,* 460 U.S. at 789. Voters who wish to support him may look a bit further down the ballot to write in his name, which is posted at the voting facilities. Also, the Supreme Court's observation of the "obvious differences" between party and non-party candidates in *Jenness* applies. *Jenness,* 403 U.S. at 441. A party candidate is presumed to have made a "preliminary showing of a significant modicum of support," whereas that presumption does not exist for write-in candidates. *Id.* at 441–42. "States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 358, 117 S.Ct. 1364, 137 L.Ed.2d

589 (1997) (internal citation omitted). States' important interest in preventing this disorder thus "permits them to enact reasonable election regulations that may, in practice, favor the traditional two-party system." *Timmons,* 520 U.S. at 367.

Additionally, other federal courts have noted a state's legitimate interests in basing ballot placement upon a showing of past strength amongst the electorate. *See Board of Election Comm'rs v. Libertarian Party of Illinois,* 591 F.2d 22, 23 (7th Cir.1979). Preferential ballot order placement avoids voter confusion, "mak[ing] the ballot as convenient and intelligible as possible for the great majority of voters, who, history indicated, would wish to vote for a candidate of one of the two major parties." *Board of Election Commissioners,* 591 F.2d at 27. [8]

Under *Burdick,* the Court also finds that, to the extent that the plaintiff experiences any injury to his constitutional rights from his inability to be listed first on the ballot, that minor injury is outweighed by the state's regulatory interests in organizing a clear and intelligible ballot, presenting a logical arrangement based on the reasonable and nondiscriminatory basis of historical strength of support, and displaying candidates in a simple way that avoids voter confusion. *See New Alliance Party,* 861 F.Supp. at 296. Therefore, the Court grants the defendants' motion on this issue.

**D. Qualifications Clause**
The Court grants the defendants' motion with respect to the plaintiff's Qualifications Clauses claim because the Court finds that the plaintiff's allegations—considered individually or in combination—do not create unconstitutional, *de facto* qualifications for public office. The relevant Qualifications Clause provides that "[n]o Person shall be a Representative who shall not have attained the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen." U.S. CONST. art. I, § 2, cl. 2.

*7 The contested state laws do not cause the plaintiff to compete for votes in a system unconstitutionally biased toward political parties, nor do they add unconstitutional qualifications to congressional election. Rather, as explained above, they are "reasonable [and] nondiscriminatory" procedural rules that further important government interests. *Burdick,* 504 U.S. at 434. What is more, even if the Texas legislature amended each of these contested election laws to the plaintiff's liking, he would still be competing amongst a voting populace that has historically favored Republican or Democratic candidates more than independent candidates.

Neither of the plaintiff's proffered cases serves to sufficiently advance his argument that Texas' Election Code provisions add another *de facto* qualification to a U.S. Representative's election requirements. *See U.S. Term Limits, Inc. v. Thornton,* 514 U.S. 779, 838, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995) (disallowing a state law that prohibited a candidate's name from appearing on the ballot if he had already served a certain number of terms in U.S. Congress); *Cook v. Gralike,* 531 U.S. 510, 526–27, 121 S.Ct. 1029, 149 L.Ed.2d 44 (2000) (prohibiting a state law that used derogatory and pejorative words on the ballot next to candidates who opposed term limits). The present plaintiff is distinguishable from the plaintiffs in *U.S. Term Limits* and *Cook* because the present plaintiff may attempt to have his name placed on the ballot every two years without any accompanying derogatory description. *See U.S. Term Limits,* 514 U.S. at 838; [9] *Cook,* 531 U.S. at 526–27.

Notably, *U.S. Term Limits* also implicated the Constitution's Elections Clause, which gives states the power to regulate the "Time, Places and Manner" of elections. *U.S. Term Limits* at 832 (quoting U.S. CONST., Art. 1, § 4, cl. 1). States are entitled to adopt "generally applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process itself." *U.S. Term Limits,* 514 U.S. at 834 (quoting *Anderson,* 460 U.S. at 788 n. 9). The measures of which the plaintiff complains are permissible regulatory measures that the Elections Clause permits. *See U.S. Term Limits* at 834 (quoting *Anderson* at 788 n. 9). In short, the plaintiff's conclusory allegations do not state a constitutional claim upon which relief can be granted.

**VI. Conclusion**
Based on the foregoing discussion, the Court grants the defendants' motion to dismiss in its entirety.

It is so **ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 1806524

Footnotes

1. The plaintiff also filed suit against the State of Texas and Harris County Clerk Beverly B. Kaufman, but they are not movants in the current motion. Nonetheless, the Court, *sua sponte,* dismisses the State of Texas and Kaufman from this suit as well. All of plaintiff's allegations are leveled against the defendants collectively, and the Court dismisses the plaintiff's complaint in its entirety, for the reasons discussed *infra.*
2. The plaintiff also filed a request for a temporary restraining order to enjoin the counting of any straight party vote cast in his congressional district, which the Court denied on October 22, 2010 (Docket Entry No. 10).
3. U.S. CONST., Art. I, § 2, cl. 2.
4. He maintains that his First Amendment claim applies to Texas via the Fourteenth Amendment's Due Process Clause.
5. The Supreme Court explicitly rejected the necessity of applying a strict scrutiny standard to every voting rights case: "to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest ... would tie the hands of the States seeking to assure that elections are operated equitably and efficiently." *Id.* at 433.
6. In some circumstances, an independent candidate can get on the general election ballot with the signatures of as few as twenty-five supporters. TEX. ELEC.CODE § 142.007(2)(B)(i). However, that particular scenario is not presently before the Court.
7. Instead, voters write the candidate's name on the ballot. TEX. ELEC.CODE § 146.031. While the plaintiff mentions that this fee-paying option is unavailable to independent candidates, the Court is unclear whether he is claiming that this different treatment also violates his constitutional rights. To the extent he is claiming that this difference presents a constitutional violation, the Court grants the defendants' motion to dismiss because not all candidates are similarly situated, for the reasons discussed *infra.*
8. *See also, New Alliance Party v. New York State Bd. of Elections,* 861 F.Supp. 282, 295–97 (S.D.N.Y.1994): "access to a preferred position on the ballot so that one has an equal chance of attracting the windfall vote is not a constitutional concern." Further, a state has an important interest in "organizing a comprehensible and manageable ballot," with "candidates presented in a logical and orderly arrangement." *Id.* at 296. "Identifying candidates who can demonstrate the support to qualify for party affiliation and separating them from those who cannot is one method of keeping the ballot in a format that the voter can easily read and assimilate." *Id.*

    Likewise, a similar Colorado statute survived a constitutional challenge, with the court finding that any constitutional injury sustained by placing less popular parties lower on the ballot was minimal, and noting that a state's "recognized interest in regulating elections is sufficient to outweigh any 'position bias' claimed by Plaintiffs." *See Libertarian Party of Colorado v. Buckley,* 938 F.Supp. 687, 693 (D.Colo.1996).
9. Although the candidates in *U.S. Term Limits,* like the plaintiff, had the option of running as write-in candidates, two important distinctions in the fact patterns still remain. First, the affected candidates in *U.S. Term Limits,* unlike the plaintiff, were incumbents or had previously served and had thus demonstrated a significant amount of support for their candidacies. *See U.S. Term Limits* at 829. Second, in *U.S. Term Limits,* the affected candidates were permanently barred from ever having their names listed on a ballot for federal office, unlike the plaintiff. *See id.* at 784.

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.