Case 4:16-cv-01299   Document 28   Filed in TXSD on 12/05/16   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
December 05, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SOURAYA FAAS and LEONARD STANLEY CHAIKIND, | § § § § § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | CIVIL ACTION NO. H-16-1299 |
| CARLOS CASCOS (In His Official Capacity as the Secretary of the State of Texas) and THE STATE OF TEXAS, | | |
| Defendants. | | |

### MEMORANDUM OPINION AND ORDER

Pending before the court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint and Application for Declaratory and Injunctive Relief (Docket Entry No. 23). For the reasons stated below, Defendants' motion will be granted.

### I. Factual and Procedural Background

Plaintiff Souraya Faas is a declared independent candidate for the office of President of the United States.[1] Plaintiff Leonard Stanley Chaikind is a resident of Texas who wanted to vote for Faas in the 2016 election. Plaintiffs brought suit against defendant Carlos Cascos in his official capacity as Secretary of the

---

[1]Factual allegations are taken from Plaintiffs' First Amended Complaint and Application for Declaratory and Injunctive Relief ("Plaintiffs' Amended Complaint"), Docket Entry No. 22.

State of Texas and against the State of Texas, claiming that portions of the Texas Election Code ("the Code") violate federal and state law. Specifically, Plaintiffs claim that §§ 141.031(a)(4)(K), 146.025(a)(1), 192.032(a), (b)(1)(B), (b)(3)(A), (b)(3)(B), (c), (d), (f), (g), 192.033(a), and 192.034(a) of the Code are unconstitutional and illegal, either facially or as applied to Plaintiffs.[2] Plaintiffs claim that the statutes "violate . . . U.S. Const. Art. II § 1, cl. 4[;] the First and Fourteenth Amendments to the United States Constitution[;] Title 42 United States Code, § 1983[;] and Sections 3, 3a, and 8 of Article 1 of The Texas Constitution."[3]

The challenged portions of the Code read as follows:

- 141.031(a)(4)(K): "A candidate's application for a place on the ballot that is required by this code must" include the statement: "I, _____, of _____ County, Texas, being a candidate for the office of _____, swear that I will support and defend the constitution and laws of the United States and of the State of Texas"

- 146.025(a)(1): "Except as otherwise provided by this code, a declaration of write-in candidacy: (1) must be filed not later than 5 p.m. of the 78th day before general election day"

- 192.032:

    (a) To be entitled to a place on the general election ballot, an independent candidate for president of the United States must make an application for a place on the ballot.

    (b) An application must:

---

[2]Plaintiffs' Amended Complaint, Docket Entry No. 22, p. 10 ¶ 18.

[3]Id.

>> (1) comply with Section 141.031, except that:
>>
>>> (B) the application must contain the applicable information required by Section 141.031(a)(4) with respect to both the presidential candidate and the running mate;
>>
>> (3) be accompanied by:
>>
>>> (A) a petition that satisfies the requirements prescribed by Section 141. 062; and
>>>
>>> (B) written statements signed by the vice-presidential candidate and each of the presidential elector candidates indicating that each of them consents to be a candidate.
>
> (c) The application must be filed with the secretary of state not later than the second Monday in May of the presidential election year.
>
> (d) The minimum number of signatures that must appear on the petition is one percent of the total vote received in the state by all candidates for president in the most recent presidential general election.
>
> (f) The following statement must appear at the top of each page of the petition: "I did not vote this year in a presidential primary election."
>
> (g) A signature on the petition is invalid if the signer:
>
>> (1) signs the petition on or before the date of the presidential primary election in the presidential election year; or
>>
>> (2) voted in a presidential primary election during the presidential election year.

- 192.033(a): "Except as provided by Subsection (c), the secretary of state shall certify in writing for placement on the general election ballot the names of the candidates for president and vice-president who are entitled to have their names placed on the ballot."

- 192.034(a): "The names of a presidential candidate and the candidate's running mate shall be placed on the ballot as one race."

Plaintiffs claim that the requirements discriminate against and place "an undue, unreasonable, and unjustified burden on independent presidential candidates."[4] Plaintiffs claim that earlier deadlines for independent candidates than party-affiliated candidates are discriminatory. Plaintiffs allege that the petition signature requirement, limited petitioning time, and early petition deadline prevented Faas from qualifying for the ballot, thus preventing Texans from voting for her and effectively diluting votes cast for Faas in other states.

Plaintiffs ask that the court declare that the challenged sections of the Election Code are illegal and unconstitutional facially or as applied. Plaintiffs ask that the court enter preliminary and permanent injunctions and writs of prohibition and mandamus preventing enforcement. Plaintiffs also seek orders placing Faas' name, that of her Vice Presidential running mate, should she name one, and those of her electors, on the Texas ballot for the General Election in 2016. In the alternative, Faas asks that she be allowed access to the ballot as a write-in candidate without naming a running mate. Finally, Faas seeks attorney's fees pursuant to the Civil Rights Attorney's Fees and Awards Act of 1976, 42 U.S.C. § 1988, and any other relief to which she may be entitled.

Defendants argue that the statutory scheme of the Texas Election Code as applied to independent candidates has been upheld

---

[4] Id. at 6 ¶ 10.

despite constitutional challenges at all levels of review. Defendants contend that Plaintiffs therefore have no legally cognizable claim.

## II. Analysis

### A. Mootness

"The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Steffel v. Thompson, 94 S. Ct. 1209, 1216 n.10 (1974) (citing cases). The motion and related filings before the court were submitted before the 2016 general election and do not address the issue of mootness. But the court must nevertheless determine whether it has continuing jurisdiction. "[A] request for injunctive relief generally becomes moot upon the happening of the event sought to be enjoined." Harris v. City of Houston, 151 F.3d 186, 189 (5th Cir. 1998). The 2016 election is a fait accompli. Any injunctive relief sought by Plaintiffs with respect to that event, including ballot placement, is therefore no longer available.

Claims pertaining to election laws, however, often fall within an exception to the mootness doctrine for the class of controversies capable of repetition, yet evading review. Kucinich v. Texas Democratic Party, 563 F.3d 161, 164 (5th Cir. 2009) (citations and internal quotation marks omitted). The United States Supreme Court has decided election cases even when the plaintiffs failed to allege

that they would be governed by the same flawed law in the next election. See Anderson v. Celebrezze, 103 S. Ct. 1564, 1567 n.3 (1983); Storer v. Brown, 94 S. Ct. 1274, 1282 n.8 (1974); Rosario v. Rockefeller, 93 S. Ct. 1245, 1249 n.5 (1973); Dunn v. Blumstein, 92 S. Ct. 995, 998 n.2, (1972). Plaintiffs' constitutional challenges to the Code and request for permanent injunction for "all subsequent Texas General Elections"[5] therefore constitute a live dispute.

### B.  Applicable Law

#### 1.  Rule 12(b)(6)

A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom. Cloud v. United States, 122 S. Ct. 2665 (2002). To defeat a motion to dismiss a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). The court generally is not to look beyond the pleadings in deciding a motion to dismiss. Spivey v. Robertson, 197 F.3d 772, 774 (5th Cir. 1999). The court does not "strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." Southland Securities Corp. v.

---

[5] Id. at 10 ¶ 18.

INSpire Ins. Solutions, Inc., 365 F.3d 353, 361 (5th Cir. 2004) (internal quotation marks and citations omitted). "[C]ourts are required to dismiss, pursuant to [Rule 12(b)(6)], claims based on invalid legal theories, even though they may be otherwise well-pleaded." Flynn v. State Farm Fire and Casualty Insurance Co. (Texas), 605 F. Supp. 2d 811, 820 (W.D. Tex. 2009) (citing Neitzke v. Williams, 109 S. Ct. 1827, 1832 (1989)).

2. Constitutional Violations

Plaintiffs allege violations of the First and Fourteenth Amendments and their parallels in the Texas Constitution. The Texas Supreme Court has held that "'the federal analytical approach applies to equal protection challenges under the Texas Constitution.'" Lindquist v. City of Pasadena Texas, 669 F.3d 225, 233 (5th Cir. 2012) (citing Bell v. Low Income Women of Texas, 95 S.W.3d 253, 266 (Tex. 2002). When it comes to free speech, "unless a party can show through the text, history, and purpose of article I, section 8, that the state constitution affords more protections than the First Amendment in regard to that case, courts should assume that free speech protections are the same under both constitutions." Democracy Coalition v. City of Austin, 141 S.W.3d 282, 297 (Tex. App.—Austin 2004, no pet.). Because Plaintiffs do not attempt to differentiate state from federal constitutional protections concerning ballot-access provisions, their claims will be addressed under the federal analytical approach as it has been

applied to state election laws. See Burdick v. Takushi, 112 S. Ct. 2059 (1992); Anderson, 103 S. Ct. 1564.

### 3. The *Anderson-Burdick* Standard

"It is beyond cavil that 'voting is of the most fundamental significance under our constitutional structure.'" Burdick, 112 S. Ct. at 2063 (quoting Illinois Bd. of Elections v. Socialist Workers Party, 99 S. Ct. 983, 990 (1979)). "It does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." Id. (citing Munro v. Socialist Workers Party, 107 S. Ct. 533, 536 (1986). For instance, the need to preserve the order and integrity of the electoral process must be weighed against an individual's desire to nominate a beloved pet or fictional character. Ballot-access provisions allow States to regulate elections but inherently limit voting rights. As a practical matter, such laws could hardly serve their legitimate purposes if they were routinely subject to strict scrutiny. See id. ("to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest . . . would tie the hands of States seeking to assure that elections are operated equitably and efficiently").

The United States Supreme Court recognized the need for a more flexible analytical framework in two landmark cases: Anderson and Burdick. These cases establish the appropriate methodology for

-8-

assessing state election laws. Texas Independent Party v. Kirk, 84 F.3d 178, 182-84 (5th Cir. 1996). Under the Anderson-Burdick methodology, "the extent to which a challenged regulation burdens First and Fourteenth Amendment rights" determines "the rigorousness of [the] inquiry into the propriety of a state election law." Burdick, 112 S. Ct. at 2063. As the Court put it:

> [A]s we have recognized when those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." Norman v. Reed, . . . 112 S. Ct. 698, 705 . . . (1992). But when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions. Anderson, . . . 103 S. Ct., at 1569-1570; see also id., . . . 103 S. Ct., at 1569-1570, n.9.

Id. at 2063-64.

Applying the Anderson-Burdick approach and similar reasoning courts have repeatedly upheld the general statutory scheme enacted in the Texas Election Code, along with several of the specific statutes challenged by Plaintiffs, as applied to minor-party and independent candidates. See American Party of Texas v. White, 94 S. Ct. 1296, 1305-06 (1974); see also Texas Independent Party, 84 F.3d at 180; Nader v. Connor, 332 F. Supp. 2d 982, 984 (W.D. Tex.), aff'd, 388 F.3d 137 (5th Cir. 2004).

In Nader a well-known independent presidential candidate and several would-be voters sought an injunction to gain ballot access after the candidate missed the May 10, 2004, deadline for submitting signed petitions. 332 F. Supp. 2d at 983-85.

Plaintiffs challenged the constitutionality of the ballot-access provisions under the First and Fourteenth Amendments. Id. The court, citing Supreme Court precedent, noted that "[m]ore restrictive signature and deadline requirements for an independent candidate may be justified if the ballot-access requirements, as a whole, are reasonable and similar in degree to those for a minor political-party candidate." Id. at 988 (citing Storer, 94 S. Ct. at 1274). The court held:

> The independent candidate ballot-access requirements preserve the integrity of the electoral process and regulate[] the number of independent candidates on the ballot by ensuring that (1) the electorate is enough aware of the candidate either to know his views or to learn and approve of them in a short period, and (2) that at least a minimum of registered voters are willing to take him and his views seriously. These justifications advanced by the State of Texas for the signature and date requirements are sufficient under the standard announced in Anderson and Burdick. Therefore, the Court concludes that the requirements of the Texas Election Code for ballot access by an independent presidential candidate are reasonable, nondiscriminatory, and constitutional as based upon [] Texas's important regulatory interests.

Id. at 992. The court upheld subsections (a), (b)(3)(A), (c), and (d) of § 192.032, concluding that "[s]tanding alone, each requirement satisfie[d] the mandate of the Constitution. Considered together, they d[id] not create the manifest injustice and discrimination urged by [the plaintiff] and satisf[ied] the test of Anderson-Burdick." Id. The court then denied the plaintiffs injunctive relief. Id. The Fifth Circuit affirmed the district court on appeal and expressly approved its reasoning. Nader v. Connor, 388 F.3d 137, 137-38 (5th Cir. 2004).

This court is bound by the decisions of the Supreme Court and the Fifth Circuit as they apply to Plaintiffs' claims. Although the broad statutory scheme of the Texas Election Code as applied to independent presidential candidates has been upheld, the court will consider Plaintiffs' challenges to specific provisions that courts have not yet addressed. Plaintiffs' remaining claims are therefore analyzed under the Anderson-Burdick framework.

C.  **Application**

Plaintiffs challenge several provisions, each of which falls into one of four categories: (1) application and petition deadlines and signature requirements for independent presidential candidates, (2) requirements concerning running mates, (3) formal application requirements, and (4) write-in candidacy requirements.

1.  Application and Petition Provisions

Plaintiffs challenge the portions of § 192.032 of the Texas Election Code that require independent presidential candidates to apply for a place on the ballot, obtain signatures in support of their candidacies totaling at least one percent of the total vote received in the state by all candidates for president in the most recent presidential general election, and file a completed application by the second Monday in May of the presidential election year. Plaintiffs claim that the signature requirements and early deadline are unduly burdensome and discriminate against independent candidates.

Plaintiffs' arguments are analogous to those made by the plaintiffs in <u>Nader</u>. The portions of the Election Code addressed by the courts in <u>Nader</u> remain substantially unchanged since 2004. The Fifth Circuit's decision therefore binds this court. Because the only substantive difference between the circumstances of the plaintiffs in <u>Nader</u> is that the Plaintiffs in this case did not even submit a petition or attempt to gain ballot access through any method other than injunction, Plaintiffs' challenge fails as a matter of law.

Plaintiffs challenge the statutory requirement that supporters who sign their petition refrain from participating in a presidential primary election in the same presidential election year. Predecessor provisions in the Texas Election Code to that effect have been upheld by the United States Supreme Court as applied to minor parties. <u>White</u>, 924 S. Ct. at 1308 (1974). The Court in <u>White</u> held that "the State may determine that it is essential to the integrity of the nominating process to confine voters to supporting one party and its candidates in the course of the same nominating process." <u>Id.</u> Because the requirements for an independent candidate are reasonable and identical to those for a minor political-party candidate, the court concludes that §§ 192.032(f) and 192.032(g) are constitutional both facially and as applied.

2.  <u>Requirements for Vice-Presidential Running Mates</u>

Plaintiffs challenge provisions requiring that presidential candidates name vice-presidential running mates to be included on their petitions, applications, and, ultimately, ballots. In their Amended Complaint, Plaintiffs do not allege any facts in support of their claim that these requirements are unduly burdensome or discriminatory. Two of the statutes, § 192.033(a) and § 192.034(a), apply to both independent and party-affiliated candidates and place no burden on would-be candidates except that they name a running mate.[6] The remaining statutes, §§ 192.032(b)(1)(B) and (b)(3)(B), which require certain personal information and statements of consent from both the candidate and her running mate, have parallels in the party-affiliated candidate requirements,[7] and impose only a minimal burden on would-be candidates.

The requirement is less burdensome than it might first appear because vice-presidential nominees may be replaced.[8] Nothing, for example, would prevent Faas from selecting a surrogate candidate who could later withdraw. The burden of finding a running mate is hardly unreasonable and is arguably less difficult for an

---

[6] At least one other court has upheld a state law prohibiting solo presidential or vice-presidential candidacies. See <u>Gelineau v. Johnson</u>, 904 F. Supp. 2d 742, 745-50 (W.D. Mich. 2012) (summarizing the history of straight-ticket voting in presidential elections and recognizing states' interests in prohibiting solo candidacies).

[7] <u>See</u> Tex. Elec. Code, § 192.031(a).

[8] <u>See</u> Tex. Elec. Code, § 192.064.

independent candidate who does not need party approval of her choice. Because the requirements are reasonable and similar in degree to those of party-affiliated candidates, the court concludes that the statutes are constitutional both facially and as applied.

3. Additional Qualifications

Plaintiffs claim that § 141.031(a)(4)(K) is unconstitutional because it places on presidential candidates a qualification not found in Article II, clause 4 of the United States Constitution by requiring that they swear an oath to support and defend the Constitution and laws not only of the United States but also of the State of Texas. Plaintiffs cite to a Supreme Court case striking down an Arkansas ballot-access provision deemed to be an indirect effort to impose term limits on members of Congress. U.S. Term Limits, Inc. v. Thornton, 115 S. Ct. 1842 (1995). The Court in Thornton held that "[a]llowing individual States to adopt their own qualifications for congressional service would be inconsistent with the Framers' vision of a uniform National Legislature representing the people of the United States." Id. at 1845.

The Court's reasoning in Thornton is applicable to ballot-access provisions creating additional qualifications for presidential candidates. If presidential candidates were required to swear the oath contained in § 141.031(a)(4)(K) in order to be placed on the ballot in Texas, the provision could be unconstitutional. But the Code provides an exception for

candidates for federal office. It expressly permits the secretary of state to "prescribe a different form for an application for . . . an office of the federal government." Tex. Elec. Code § 141.031(d)(1). The most recent application form for independent presidential candidates available on the Texas Secretary of State's website, for example, does not contain the oath.[9] Because Plaintiffs do not allege that Faas was required to complete an application containing the oath or that she was otherwise subjected to the unconstitutional qualification, her claim fails as a matter of law.

4. <u>Write-in Deadline</u>

Plaintiffs challenge § 146.025(a)(1) of the Code, which sets a deadline for filing a declaration of write-in candidacy of "5 p.m. of the 78th day before general election day." Faas complains that the only option available to her as a result of her inability to meet the requirements for inclusion on the ballot as an independent candidate is a write-in candidacy.[10] However, she fails to explain how the later deadline for write-in candidates is unconstitutional either facially or as applied. Because the write-in deadline is reasonable and applies equally to all candidates, the court concludes that it is constitutional both facially and as applied.

---

[9]"Independent Candidate's Application for President," <u>available at</u> http://www.sos.state.tx.us/elections/forms/dw1-3.pdf.

[10]Plaintiffs' Amended Complaint, Docket Entry No. 22, p. 9 ¶ 15.

5. <u>Remaining Claims</u>

"Section 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States." <u>Gonzaga University v. Doe</u>, 122 S. Ct. 2268, 2276 (2002). The challenged statutes pass constitutional muster, and Plaintiffs have pled no other violation of rights. Plaintiffs' § 1983 claims will therefore be dismissed.

Attorney's fees may be awarded to a "prevailing party" in a § 1983 action. 42 U.S.C. § 1988(b). Because Plaintiffs have not prevailed on any claim, no award of fees is authorized by § 1988.

### III. Conclusions and Order

For the reasons stated above, Defendants' Motion to Dismiss (Docket Entry No. 23) is **GRANTED**. Plaintiffs' claims will be **DISMISSED with prejudice**.

**SIGNED** at Houston, Texas, on this 5th day of December, 2016.

SIM LAKE
UNITED STATES DISTRICT JUDGE